1

2

3

4                                                    *E-filed 11/1/06*

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8

9                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

                              SAN JOSE DIVISION

10

11   RICK M. REINHARDT,                    Case No. C05-05143

12              Plaintiff,                  **ORDER GRANTING IN PART**
        v.                                  **AND DENYING IN PART**
13                                          **DEFENDANTS' MOTIONS TO**
                                            **DISMISS (FRCP 12(b)(6))**
14   SANTA CLARA COUNTY, SANTA CLARA
     COUNTY PUBLIC DEFENDER'S OFFICE,
15   SANTA CLARA COUNTY DISTRICT           Re: Docket Nos. 30 and 33
     ATTORNEY'S OFFICE, CITY OF SAN
16   JOSE, WILL MANION, ENRIQUE GARCIA,
     ROBERT MAYS, DOROTHY
17   MOTSCHENBACHER, and DOES 1-50,
     INCLUSIVE,
18

19              Defendants.
     _____/
20

21                          **I.  INTRODUCTION**

22          Rick Reinhardt brings claims for damages for "illegal and unconstitutional jailing"

23   against two public entities, two police officers, and two private citizens.[1]  He bases his claims

24   on 42 U.S.C. § 1983, California's Bane Act, and common law negligence.  The damages stem

25   from the ten months he spent in jail, accused of murder, before authorities concluded he had

26   been framed and released him.  Defendants County of Santa Clara (the District Attorney's

27

28   _____
              [1]      The claims against the private citizens, Robert Mays and Dorothy
                     Motschenbacher, have been severed, and the action stayed with respect to
                     them, by an order issued by this court on March 15, 2006.

1   Office and Public Defender's Office), the City of San Jose, and San Jose police officers Will

2   Manion and Enrique Garcia move to dismiss under Fed. R. Civ. P. 12(b)(6).

## II. BACKGROUND

**A.   FACTUAL HISTORY**

All of the following "facts" derive from the allegations in the complaint, which the court must accept as true for Rule 12(b)(6) purposes. On February 22, 2004, Pete Bianco was robbed and shot to death. His body, which had been hidden in his garage in San Jose, was discovered on February 26. San Jose police officers Manion and Garcia began an investigation to identify the killer.

A few days later, Robert Mays, an apparent acquaintance of both the murder victim and Rick Reinhardt, told police that he believed Reinhardt was involved in the crime. Later, Mays said that Reinhardt was angry because his former girlfriend was then dating Bianco, and that Reinhardt had told Mays two weeks before the murder that he was going to "cap" Bianco.

After the initial tip, San Jose police conducted surveillance of both of plaintiff's residences (Sunnyvale and Redwood City), obtained search warrants, and on March 1st searched them. Plaintiff, who was at the Redwood City address at the time of the search, was arrested at that time on an unrelated warrant.

The Redwood City search uncovered under plaintiff's mattress a gun (the murder weapon), the keys to Bianco's house, and a bag of white crystals.

Reinhardt was "stunned" to learn about the items under his mattress. He insisted that Bianco was a friend, that he did not own a gun, and that someone -- probably Mays -- was trying to frame him.[2]

Reinhardt continued to profess his innocence even after police officers falsely told him that DNA, video, and eyewitnesses all placed him at the crime scene. His story remained the same even when the police said that he could help himself by acknowledging the killing but explaining it was an accident or self defense.

---

[2]   Plaintiff figured Mays was the culprit because he was the only person who knew that Reinhardt had a Redwood City address and that the door was always unlocked.

United States District Court

For the Northern District of California

1    In February or March, the police interviewed plaintiff's ex-girlfriend, Dorothy

2    Motschenbacher.  She said her relationship with Bianco had provoked arguments between

3    Reinhardt and Bianco, and she thought it was possible that Reinhardt had killed Bianco.

4        At some unspecified point in time, evidence was developed which allegedly should have

5    cast doubt on Mays' credibility sufficient to support the conclusion that Reinhardt had been

6    framed.  For example, unnamed "acquaintances" of Mays told police that he owned guns, shot

7    guns in his garage, and made silencers for guns.  Mays denied shooting in his garage or

8    constructing silencers, and "hesitated and stalled" when asked if he would take a lie-detector

9    test.  Then, at another unspecified time, someone other than the police obtained Mays' cell

10   phone records.  Those records showed that on February 28, Mays called Reinhardt (and,

11   presumably, talked to him) while Reinhardt was out of town.  The phone records also revealed

12   that Mays' call was made from the Redwood City area (suggesting that Mays might have taken

13   this opportunity to plant the incriminating evidence in plaintiffs' residence).  However, Officer

14   Manion allegedly tried to discourage third parties from digging up evidence to show Reinhardt's

15   innocence, and even falsely told one of them that plaintiff had already killed someone else.

16       At some other point, plaintiff's cell phone records were reviewed.  They showed that

17   Reinhardt had called and paged Bianco "dozens of times" in the days after he was murdered and

18   before the body was discovered.  These calls might suggest that plaintiff did not know Bianco

19   was dead, and, if so, then surely he had not killed him.

20       Although Motschenbacher initially told police that Reinhardt was violent, she later told

21   them she had never known him to have a gun, and that it was "possible" that he had been

22   framed.

23       In the meantime, the Public Defender assigned to Reinhardt's case told him that the job

24   of the Public Defender's Office was to plea bargain, and that she was afraid to go to trial in this

25   case.  She said that even though he was innocent he would probably go to jail because the

26   District Attorney's Office had more money and power than the Public Defender's Office.  She

27   pointed to the Lacy Peterson case and the Ricky Walker case to illustrate that innocent people

28   or people without much evidence against them sometimes go to jail anyway.  She also said that

she would wait for the District Attorney to perform forensic tests because they had more money than the Public Defender, and that the District Attorney usually led the way on cases.

Reinhardt had a preliminary examination on July 22, 2004. Mays testified and lied under oath, claiming that he was at home when he called Crimestoppers, while his cell phone records revealed that he was actually in the area of Reinhardt's residence.

When the police realized that Reinhardt was not responsible for the murder, they nonetheless told him that he would remain in jail until Mays was arrested. They told Reinhardt that he would have to do the prison time if they could not catch Mays.

Police eventually arrested Mays in December 2004 for killing Bianco and framing Reinhardt. Reinhardt was released from custody, and ultimately obtained a judicial finding of factual innocence.

Reinhardt now sues the Santa Clara County District Attorney's Office, the Santa Clara County Public Defender's Office, the City of San Jose ("the City"), and San Jose police officers Will Manion and Enrique Garcia ("Officers;" collectively with the City, "City defendants") under 42 U.S.C. § 1983 for violation of his Fourteenth and Sixth Amendment rights. He also bases claims on California's Bane Act, and on "negligence."

**B.    PROCEDURAL HISTORY**

On March 15, 2006, this court granted, with leave to amend, certain portions of motions by the City and County defendants to dismiss plaintiff's original complaint. In his subsequent amended complaint, plaintiff named all the same defendants (substituting the City of San Jose for the San Jose Police Department), added some factual allegations, and dropped claims based directly on the California Constitution.

The County defendants and City defendants moved, separately, for dismissal under Fed. R. Civ. P. 12(b)(6). Plaintiff did not file timely oppositions. At a hearing held on July 18, 2006, the court set an adjusted briefing schedule for plaintiff and defendants. In August, the court issued an order modifying the briefing schedule and requiring further briefing on legal issues. All parties submitted further briefing.

4

**United States District Court**
For the Northern District of California

### III.  LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims stated in the complaint.  A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Where it is clear that amendment would not save the complaint, dismissal with prejudice is warranted.  See Polich v. Burlington Northern, Inc., 942 F.2d 1467, 1472 (9th Cir. 1991).  In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  The court must accept as true not only all material allegations in the complaint, but the reasonable inferences to be drawn from them as well.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  However, the court "need not accept as true conclusory allegations or legal characterizations.  Nor need it accept unreasonable inferences or unwarranted deductions of fact."  9 Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before Trial § 221 (2006).

### IV. DISCUSSION

#### A.    FEDERAL CLAIMS

Plaintiff sues all defendants under 42 U.S.C. § 1983, which provides in relevant part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C.A. § 1983 (West 2003).  In the seminal case of Monell v. Department of Social Services, the Supreme Court concluded that local governments, including cities and counties, may be "persons" subject to § 1983 liability.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  "A local government entity is liable under § 1983 when 'action pursuant to official

1    municipal policy of some nature cause[s] a constitutional tort.'"  Oviatt v. Pierce, 954 F.2d

2    1470, 1473-74 (9th Cir. 1992) (quoting Monell, 436 U.S. at 691).

3    **1.    Section 1983 Claim against the District Attorney's Office**

4         Plaintiff sues the District Attorney's Office, invoking the Monell test for municipal

5    liability under § 1983.  The County moves to dismiss on the grounds that the District Attorney's

6    Office is not an official policymaker for the County with respect to the policies alleged by

7    plaintiff.  Rather, says the County, the District Attorney's Office here acted as a policymaker for

8    the State of California.

9         Plaintiff alleges the following "policies" on behalf of the District Attorney's Office: a

10   practice or custom of failing to investigate significant leads that point towards a defendant's

11   innocence; a practice of not releasing a suspect until another was in custody; and a failure to

12   adequately provide its district attorneys with sufficient training regarding the district attorney's

13   investigatory role.[3]

14        In examining the pleading for Rule 12(b)(6) purposes the question is whether the

15   District Attorney's Office makes policy for the state of California or for Santa Clara County.  If

16   the District Attorney's Office's actions are pursuant to County policy, then the County is

17   potentially liable for a constitutional tort caused by them.  The distinction is functional and

18   turns on state law.  One looks at particular functions, not general labels.  McMillian v. Monroe

19   County, 520 U.S. 781, 785-86 (1997).  The California Supreme Court and the Ninth Circuit

20   Court of Appeals draw a distinction between "prosecutorial" functions, where a district attorney

21   is considered a state actor, and "investigatory" or "administrative" functions, where a district

22   attorney is considered a county actor.  In further defining these terms, the Ninth Circuit has

23   looked for guidance to another area of the law where this same distinction is made: the question

24   of absolute immunity in cases where a prosecutor is sued in his personal capacity under § 1983.

25   The rule is that prosecutorial functions are those "intimately associated with the judicial phase

26

27        [3]    The court dismissed, as overly vague, this third "policy" allegation in its order
                 on the previous motion to dismiss.  Plaintiff having alleged no new particulars
28               in the Amended Complaint, this time it is dismissed with prejudice.  The first
                 two policy allegations are new, and are examined here.

of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  On the other hand, where a prosecutor performs functions normally performed by a police officer, those acts are "investigative." See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).  Where he makes personnel decisions, his acts are "administrative."  Botello v. Gammick, 413 F.3d 971, 976 (9th Cir. 2005).

Although plaintiff has been careful to claim that the "policy" failures at the District Attorney's Office are investigatory or administrative, the court concludes that, at heart, they are prosecutorial. That is, the labels that plaintiff chose to characterize them do not fit the policies actually alleged.  The prosecutor's actions (and the claimed policies behind them) are part and parcel of the judicial process.  Plaintiff does not assert that the district attorney, in the course of police-like investigation, caused some affirmative harm.  Rather, the alleged failure to investigate significant leads caused harm only with respect to the decision to prosecute.  In other words, the proximate cause of plaintiff's alleged injuries at the hands of the District Attorney's Office was the continued prosecution, rather than any investigative or administrative policy or malfeasance.  Meanwhile, the alleged practice of not releasing a suspect until another is in custody is clearly a prosecutorial function.  See Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26, 31 (1st Cir. 1995) (decision not to dismiss a criminal case lies at the heart of the prosecutorial function).  Thus, even if plaintiff can ultimately prove all of his allegations about the policies of the District Attorney's Office, these are policies regarding prosecution, a state function.  Therefore, the District Attorney's Office (i.e. the County of Santa Clara) is not a "person" subject to § 1983 liability here.  The § 1983 claim against the District Attorney's Office is dismissed with prejudice.

**2.      Section 1983 Claim against the Public Defender's Office**

Plaintiff asserts that the Public Defender's Office had policies and practices that deprived him of his rights under both the Sixth Amendment (right to counsel) and the Fourteenth Amendment (due process).  To state a claim under § 1983, a plaintiff must allege, *inter alia*, that the defendant has acted "under color of state law."  The Supreme Court held in Polk County v. Dodson that "a public defender does not act under color of state law when

7

performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981).  While the exercise of "independent professional judgment in a criminal proceeding" does not provide the basis for § 1983 liability, the Supreme Court left open the possibility that a Public Defender might act under color of state law "while performing certain administrative and possibly investigative functions."  Id. at 324-25.  In Miranda v. Clark County, 319 F.3d 465 (9th Cir. 2003), the Ninth Circuit illustrated this possibility by holding that the complaint stated a valid claim against a county public defender in his official capacity, where it alleged (1) a policy of allocating resources based on polygraph tests taken by defendants, and (2) a policy of assigning attorneys so inexperienced as to amount to deliberate indifference to defendants' constitutional rights.  Both of these "policies" were implemented by the public defender in his administrative role, and thus were under color of state law for § 1983 purposes.  The court finds that only one of plaintiff's several allegations against the Public Defender's Office states a viable Miranda-like claim.

In his amended complaint, plaintiff alleges that the Public Defender's Office had the following policies and practices: failing to adequately provide its attorneys with sufficient training regarding the preservation of a defendant's constitutional rights; relying on the District Attorney's Office to obtain forensic test results that could prove a defendant's innocence; discouraging defendants from going to trial despite their innocence; and discouraging defendants from going to trial by threats of a powerful District Attorney's Office and by telling defendants that innocent people go to prison every day.

The alleged failure to adequately train attorneys is again stated too vaguely for the court to be able to ascertain whether it falls within the category of a lawyer's traditional functions or the category of administrative functions.  The § 1983 claim is dismissed with prejudice as to this alleged practice.

The allegation concerning a policy of waiting for the District Attorney's Office to perform forensic tests does pass muster for pleading purposes.  This policy could potentially be shown to be the kind of administrative decision regarding resource allocation that the Miranda court concluded was under color of law.  The County argues that insufficient facts are pled to

support the inference that some sort of funding decision impacted plaintiff's rights.  However, it would be inappropriate to decide a factual issue of causation now, because in this circuit the causation element of a § 1983 claim is not a high hurdle at the pleading stage.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 685 (9th Cir. 2001).  The motion to dismiss is denied as to this alleged practice, because the allegations describe potential violations of the rights guaranteed by the Sixth and Fourteenth Amendments.

Finally, the various allegations about policies of discouraging defendants from going to trial, even if shown to be true, do not allege action under color of law.  Such legal strategies and client communications fall within the realm of a lawyer's traditional functions, and therefore the motion to dismiss is granted, with prejudice, as to these policies.  In any event, and merely as an aside, the court fails to see any logical connection between the supposed policies about urging a defendant to plead guilty and the harm about which plaintiff complains.  The alleged harm here is a delay in securing plaintiff's release, and the only alleged "policy" which could implicate that is the one about funding considerations causing the Public Defender's Officer to dally about securing what could have been exculpatory forensic tests.

**3.      Section 1983 Claim against the Officers**

Here there is no question of municipal policy under Monell, because the Officers are obviously "persons" subject to § 1983 liability.  Rather, the issue is the extent of police liability under § 1983 after a prosecutor files a criminal complaint based on an independent finding of probable cause.

Plaintiff alleges that Officers Manion and Garcia violated his Fourteenth Amendment rights in the following ways: deliberately ignoring and failing to investigate significant leads and exculpatory evidence that would have led to his freedom; discouraging third parties from trying to prove his innocence; allowing him to remain in jail despite concluding that he was innocent; and keeping him in the dark about when he would be released.

The City, representing the Officers, argues that arresting officers are insulated from liability under § 1983 for harm suffered after the prosecutor initiates formal prosecution because there is a rebuttable presumption that a prosecutor exercises independent judgment regarding

United States District Court

For the Northern District of California

1    the existence of probable cause in filing a complaint.  <u>Smiddy v. Varney</u>, 803 F.2d 1469, 1471

2    (9th Cir. 1986).  However, the court's research reveals that "the presumption of independent

3    prosecutorial judgment in the charging decision is an evidentiary presumption applicable at the

4    summary judgment stage to direct the order of proof; it is not a pleading requirement to be

5    applied to a motion to dismiss, before discovery has taken place."  <u>Galbraith v. County of Santa</u>

6    <u>Clara</u>, 307 F.3d 1119, 1126 (9th Cir. 2002).  Plaintiff has alleged "malicious acts" and

7    "conscious disregard for his rights."  This is more than enough to survive a motion to dismiss

8    under the <u>Galbraith</u> standard.  Similarly, "a bad faith failure to collect potentially exculpatory

9    evidence would violate the due process clause."  <u>Miller v. Vasquez</u>, 868 F.2d 1116, 1120 (9th

10   Cir. 1989).  Reading plaintiff's allegations in the most favorable light, some of them might rise

11   to the level of "bad faith."

12       Furthermore, more is at stake here than plaintiff's right to independent prosecutorial

13   judgment; plaintiff also has a due process right to be free from continued detention after it was

14   or should have been known that he was entitled to release.  <u>See Lee v. City of Los Angeles</u>, 250

15   F.3d 668, 683 (9th Cir. 2001); <u>Cannon v. Macon County</u>, 1 F.3d 1558, 1563 (11th Cir. 1993).  It

16   remains to be seen whether Officers Manion and Garcia could conceivably be liable under this

17   theory.  The City's motion to dismiss the § 1983 claim against the Officers is denied.

18   **4.       Section 1983 Claim against the City**

19       In this court's March 15, 2006 order dismissing, *inter alia*, the plaintiff's § 1983 claim

20   against the City with leave to amend, the court noted that <u>Lee</u> provides a viable legal theory that

21   the City defendants violated plaintiff's due process rights.  However, the original complaint did

22   not meet the <u>Monell</u> requirement for municipal liability, because it did not sufficiently point to a

23   particular City policy, custom or practice.[4]  The amended complaint adds an allegation of "a

24   custom or practice of violating a suspect's constitutional rights by keeping him in custody,

25   despite evidence pointing to someone else, until the true suspect is arrested."  This allegation

26   _____

27       [4]      The original complaint did allege that the City failed to adequately provide
             officers with sufficient training with respect to proper and thorough
28             investigation techniques.  This is realleged in the amended complaint, but it
             remains too vague, and is now dismissed with prejudice.

10

United States District Court

For the Northern District of California

1   meets the standard set in the March 15 order, because it alleges a specific municipal practice.

2   The City argues that plaintiff has not shown the causal link between city policy and the alleged

3   constitutional violations, and that plaintiff has not sufficiently proven the existence of any

4   unconstitutional policies.  However, these issues of causation and proof of an actual policy are

5   factual ones to be addressed at a later stage of this proceeding.  Similarly, the City's contention

6   that it was not plaintiff's jailer also goes to causation, and therefore is properly addressed later.

7   The City's motion to dismiss the § 1983 claim against the City is denied to the extent that

8   liability is premised on an alleged custom or practice of keeping a former suspect incarcerated

9   until the real criminal is found.

10  **B.     STATE CLAIMS**

11  **1.     California Civil Code Section 52.1**

12          Plaintiff sues all defendants under Cal. Civ. Code § 52.1, known popularly as the Bane

13  Act.  This statute creates a cause of action for "any individual whose exercise or enjoyment of

14  rights secured by the Constitution or laws of the United States, or … of this state, has been

15  interfered with, or attempted to be interfered with" by any other person through "threats,

16  intimidation, or coercion."  Cal. Civ. Code § 52.1(a)-(b) (West Supp. 2006).  In short, § 52.1

17  requires "an attempted or completed act of interference with a legal right, accompanied by a

18  form of coercion."  Jones v. Kmart Corp., 17 Cal.4th 329, 334 (1998).  There is no requirement

19  of state action analogous to the requirement of 42 U.S.C. § 1983.  The Bane Act does not create

20  any new substantive rights, but instead establishes a new remedy for interference with existing

21  rights.  See Harold E. Kahn & Robert D. Links, California Civil Practice Civil Rights Litigation

22  § 3:16 (2006).  Subsection (j) of § 52.1 states that "speech alone is not sufficient to support" a §

23  52.1 action, unless the "speech itself threatens violence" and the person against whom the threat

24  is directed "reasonably fears that, because of the speech, violence will be committed" and that

25  "the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code

26  § 52.1(j) (West Supp. 2006).

27          Thus there are three elements to pleading a Bane Act claim here: (1) a legal right; (2)

28  threats, intimidation, or coercion going beyond speech; and (3) interference.  The court will

1    discuss them in order.

2            **a.  Legal Rights**

3            Plaintiff alleges that all of the defendants violated (a) his "right to be free from the

4    deprivation of liberty without due process of law as secured by the Fourteenth Amendment and

5    the California Constitution, Article 1, §7;" (b) his "right to effective assistance of counsel as

6    secured by the Sixth Amendment and the California Constitution, Article 1, §15;" and (c) his

7    "right to enjoy and defend life and liberty, acquire, possess and protect property, and pursue and

8    obtain safety, happiness and privacy, as secured by the California Constitution, Article 1, §1."

9            Unfortunately, plaintiff lumps all defendants together and does not articulate which

10   "facts" as to which defendant entitles him to relief under the Bane Act.  As discussed above,

11   Lee potentially provides a viable theory with respect to the violation of plaintiff's due process

12   rights.  With respect to the "right to counsel" allegation, that clearly can only apply to the Public

13   Defender's Office.  And, since the Bane Act does not create substantive rights, it remains to be

14   seen whether plaintiff can actually establish an underlying violation of one or more existing

15   rights and then fit that violation into the Bane Act requirements.

16           **b.  "Threats, Intimidation, or Coercion"**

17   **i.  The District Attorney's Office**

18           This court's earlier order dismissed the § 52.1 claim against the District Attorney's

19   Office because it found that the original complaint's allegations of threats, intimidation, and

20   coercion pertained only to the police officers, not the County actors.  The amended complaint

21   adds an allegation that the "District Attorney's Office ignored clear evidence of his innocence,

22   which demonstrated to Plaintiff that they were willing to send him to prison for a crime he did

23   not commit."  Drawing all favorable inferences, plaintiff has alleged that he was coerced and

24   intimidated into giving up his rights due to the message sent by his continued prosecution in the

25   face of evidence of innocence.  See Venegas v. County of Los Angeles, 32 Cal.4th 820, 850-51

26   (2004) (Baxter, J., concurring) (noting the broad scope of the "threat, intimidation, or coercion"

27   requirement).  (Of course, plaintiff also has alleged that the ten month incarceration itself

28   constituted coercion that deprived him of rights.)

*United States District Court*

For the Northern District of California

**ii. The Public Defender's Office**

Plaintiff alleges that the "Public Defender's statements that he would likely go to prison regardless of his innocence, and comments that the District Attorney's Office was more powerful and would therefore win at trial, were meant to coerce Plaintiff into plea bargaining. Plaintiff was both threatened and intimidated by the Public Defender's statements that she was afraid to go to trial and that her office did not have the proper resources to defend him."  These allegations, limited as they are to "statements," fail to state a claim, because speech alone is not sufficient to support a § 52.1 action, unless the speech itself threatens that violence will be committed by the speaker.  Cal. Civ. Code § 52.1(j) (West Supp. 2006).  The Bane Act claim against the Public Defender's Office is dismissed with leave to amend to allege "threats, intimidation, or coercion" going beyond speech alone.

**iii. The City and the Officers**

With respect to the City defendants, plaintiff has alleged coercion going beyond "speech alone," because the Officers took many non-speech actions with respect to Reinhardt, including the arrest and investigation.  The City is potentially liable for the acts of the Officers pursuant to Cal. Gov't Code § 815.2 (West 1995).

The City cites cases, unconvincingly, that non-violent police action is not coercion.  The City cites one case in its supplemental briefing, Cabesuela v. Browning-Ferris Inds. of California, Inc., 68 Cal.App.4th 101 (Cal. Ct. App. 1998), which relies on Boccato v. City of Hermosa Beach, 29 Cal.App.4th 1797 (Cal. Ct. App. 1994).  But, since Boccato was subsequently legislatively overruled, Cabesuela adds nothing to the City's argument.[5]

---

[5]      The City argues in its moving papers that § 52.1 is an anti-discrimination statute that doesn't apply to all constitutional deprivations, once "read in conjunction with surrounding provisions."  However, the case cited for this proposition, Boccato v. City of Hermosa Beach, 29 Cal.App.4th 1797 (Cal. Ct. App. 1994), was expressly disavowed in the legislative finding accompanying the 2000 amendment to the Bane Act.  The legislature declared that the decision in Boccato "misconstrued" the law and that the Bane Act "does not require the individual" whose rights were violated "to be a member of a protected class."  West's Ann. Civ. Code § 52.1, Historical and Statutory Notes to 2000 Legislation.  See also Venegas v. County of Los Angeles, 32 Cal.4th 820 (2004).

At the July hearing on this motion, the court pointedly told counsel for

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Furthermore, the City is mistaken in its contention that non-violent police action does not

2    constitute coercion.  "Use of law enforcement authority to effectuate a stop, detention

3    (including use of handcuffs), and search can constitute" threats, intimidation, or coercion.  Cole

4    v. Doe 1 Thru 2 Officers of City of Emeryville Police Dept., 387 F.Supp.2d 1084, 1103 (N.D.

5    Cal. 2005).  Cole also cites an unpublished California decision, Whitworth v. City of Sonoma,

6    where a California appellate court held that the act of a police officer physically barring the

7    plaintiff from entering a meeting can constitute "coercion" under § 52.1.  Whitworth v. City of

8    Sonoma, No. A103342, 2004 WL 2106606 (Cal. Ct. App. Sept. 22, 2004).

9    **c.  Interference**

10          At first blush the Bane Act's use of the terms "interfer[ence] with" and "exercise or

11   enjoyment of rights," as opposed to the more direct "deprivation of any rights" language in 42

12   U.S.C. § 1983, might suggest that in order to be liable a Bane Act defendant must somehow

13   induce the plaintiff to give up a positive right to do something.  However, Jones v. Kmart Corp.,

14   17 Cal.4th 329, 334 (1998) suggests that "interference with" a right is the same as "violating" a

15   right, and commentators agree.  See Harold E. Kahn & Robert D. Links, California Civil

16   Practice Civil Rights Litigation § 3:16 (2006).  There is no requirement that a defendant must

17   manipulate a plaintiff into giving up rights of his own accord, so long as the defendant has

18   actually violated plaintiff's legal rights.

19   **d.  Summary of Bane Act Findings**

20          The Bane Act is broadly worded.  It has been amended to extend its reach beyond its

21   original purposes.  There is a paucity of California cases interpreting it, and the courts in those

22   few cases have struggled with exactly what it means.  Plaintiff's Bane Act allegations are

23   sweeping but do provide defendants with bare notice.  The court will wait to see if they can be

24   fleshed out and supported by proof.  In general, and for present purposes, they will suffice.  The

25   amended complaint alleges "threats, intimidation, or coercion" on the part of the District

26

27          the City that Boccato had been overruled and that he should not have cited it
            in support of his arguments.  For counsel to then submit a supplemental brief
28          which once again -- indirectly -- relies on Boccato is, frankly, both
            exasperating and deeply disturbing.

United States District Court

For the Northern District of California

1   Attorney's Office and the City defendants, so those allegations survive for now.  However, the

2   Bane Act claims are dismissed (with prejudice) as to the District Attorney's Office, the City,

3   and the Officers with respect to deprivation of counsel.  Since only speech is alleged, the Bane

4   Act claim is dismissed (without prejudice) as to the Public Defender's Office.

5   **2.     Negligence**

6           Reinhardt alleges common law negligence against all defendants.  While negligence is

7   directly attributed to the Officers, the claims against the Public Defender's Office, the District

8   Attorney's Office, and the City depend on Cal. Gov't Code § 815.2, which provides that a

9   public entity is liable for acts or omissions of employees committed within the scope of their

10  employment, and inversely that a public entity is not liable for any injury where the employee is

11  immune.  Cal. Gov't Code § 815.2 (West 1995).  All allegations of direct liability on the part of

12  the entity defendants, such the failure-to-train allegations, fail as a matter of law, because

13  plaintiff has cited no statute imposing such liability.  Cal. Gov't Code § 815 (West 1995);

14  compare Eastburn v. Reg'l Fire Protection Auth., 31 Cal. 4th 1175 (2003).  Thus each

15  negligence claim against an entity defendant is dismissed in part, with prejudice.  Because there

16  is no question here that all the alleged acts were committed within the various employees' scope

17  of employment, plaintiff's claims will partially survive the motion to dismiss if he adequately

18  alleges a duty of care on the part of the individual prosecutors, public defenders, and police

19  officers. So long as a duty exists as a matter of law, and no immunity exists as a matter of law,

20  plaintiff's claims should not be dismissed now.  Issues of breach of duty, causation, and injury

21  are matters of fact to be examined later in this litigation.

22  **a. The District Attorney's Office**

23          Plaintiff alleges that the district attorneys assigned to Bianco's murder owed plaintiff a

24  duty to act reasonably so as to not cause him undue harm and a duty to properly and adequately

25  investigate all reasonable leads and evidence.  The court finds that, in addition to a duty not to

26  cause undue harm, the prosecutors had a duty to gather and present such evidence as will

27  convict the guilty or exonerate the innocent.  See Tribulski v. County of Los Angeles, 83

28  Cal.App.3d 828, 831 (Cal. Ct. App. 1978); see also Hamilton v. City of San Diego, 217

United States District Court

For the Northern District of California

Cal.App.3d 838, 847, n.7 (Cal. Ct. App. 1990) (citing <u>Tribulski</u> and using the term "affirmative duty").

The next issue is whether the prosecutors are legally immune from liability for their alleged conduct. If so, the District Attorney's Office is also immune. Cal Gov't Code § 815.2(b) (West 1995). The County contends that the district attorneys are immune thanks to so-called "discretionary act" immunity (Cal. Gov't Code § 820.2) and to "malicious prosecution" immunity (Cal. Gov't Code § 821.6).

Discretionary act immunity protects acts or omissions that are "the result of the exercise of … discretion… whether or not such discretion be abused." Cal. Gov't Code § 820.2 (West 1995). Cases interpreting § 820.2 have distinguished between basic policy decisions, which are immune from liability, and ministerial acts that merely implement a policy already in place, which are not. <u>See, e.g.,</u> <u>Johnson v. State</u>, 69 Cal.2d 782 (1968). The court is satisfied that plaintiff's allegations regarding the negligent behavior of the individual prosecutors assigned to Bianco's murder relate to the day-to-day implementation of previously established policies. Thus, at this point, the court declines to find that the prosecutors' acts are immunized as basic policy or planning decisions under § 820.2.

The malicious prosecution immunity statute provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6 (West 1995). Plaintiff argues that this immunity cannot apply here, because he has brought a negligence claim, not a claim for malicious prosecution, which is a separate tort under California law. The County correctly responds that courts have applied malicious prosecution immunity beyond the strict confines of a malicious prosecution claim. The County is also correct that courts have applied the immunity to prosecutors and to negligence claims. But that does not resolve the question whether or not *these* prosecutors are necessarily immune from liability for the kind of negligence asserted in *this* case. Plaintiff does not assert negligence in his arrest, or in instituting the process against him. Rather, he alleges a failure to investigate that caused him to languish in jail longer than he should have. A case that

United States District Court

For the Northern District of California

1    this court cited in its prior order is instructive on the fine points of legal theory applicable here.

2    Martinez v. City of Los Angeles, 141 F.3d. 1373 (9th Cir. 1998) is based on California tort law

3    and clearly distinguishes between negligence in the initiation of a prosecution and negligence

4    that arises after a prolonged detention.  The Martinez court found that the same immunity that

5    protected police officers from malicious prosecution liability protected them from liability for a

6    negligent investigation that led to an arrest.  Id. at 1381.  However, there was no such immunity

7    for an allegedly negligent failure to investigate the validity of an incarceration after sufficient

8    notice.  Id.  Because the plaintiff's negligence claim against the District Attorney's Office may

9    fit into this space created by Martinez, the court declines to dismiss this claim at this time.

10   **b.  The Public Defender's Office**

11          The potential negligence liability of the Public Defender's Office turns on the existence

12   of a duty of care on the part of the individual public defender, because it seems clear that no

13   legal immunity applies.  Plaintiff alleges that the public defender assigned to his case owed him

14   a duty to act reasonably not to cause him undue harm, as well as a duty to properly and

15   adequately investigate all reasonable leads and evidence.  In addition to the duty not to cause

16   undue harm, the public defender had a "responsibility to adequately research the facts and the

17   law," In re Hawley, 67 Cal.2d 824, 828 (1967), and a "duty to investigate carefully all defenses

18   of fact and of law that may be available to the defendant."  In re Williams, 1 Cal.3d 168, 175

19   (1969).  See also Barner v. Leeds, 24 Cal.4th 676, 689 (2000).

20          No immunity protects the public defender from liability here, and therefore no immunity

21   protects the Public Defender's Office.  Discretionary act immunity does not apply to a public

22   defender's actions after making the decision to represent a defendant.  Barner, 24 Cal.4th at

23   684-92.  The County argues in its supplemental briefing that plaintiff's claims are barred by the

24   "litigation privilege" codified at Cal. Code Civ. Proc. § 47, but that privilege does not apply

25   here.  Silberg v. Anderson, 50 Cal. 3d 205, 212-13 (1990) makes it clear that this privilege

26   affords freedom from worry about tort liability for litigants and witnesses making statements in

27   court proceedings.  That is clearly inapplicable to statements made in private between attorney

28

and client.  The court therefore declines to dismiss plaintiff's negligence claim against the

Public Defender's Office at this time.

**c. City Defendants**

In one respect, the court has changed its mind about a conclusion in its order on the first

motion to dismiss.  The court there held, under the authority of <u>Martinez v. City of Los Angeles</u>,

141 F.3d 1373 (9th Cir. 1998), that plaintiff had stated a negligence claim against the City

defendants based on the Officers' alleged failure to act on significant leads and exculpatory

evidence.  The outcome in <u>Martinez</u> hinged on unique facts creating a special relationship

between American law enforcement officials and a suspect held in Mexico pursuant to their

request.  Unique facts do not exist here, thus there is no "special relationship."

Next, California case law states that police officers owe no duty of further investigation

once probable cause has been established.  <u>Hamilton v. City of San Diego</u>, 217 Cal.App.3d 838,

846 (Cal. Ct. App. 1990).  After probable cause is established, any liability arising out of an

officer's conduct "must be based upon more than mere nonfeasance."  Plaintiff's sole allegation

of affirmative malfeasance is that one or both of the Officers affirmatively discouraged third

parties from trying to prove plaintiff's innocence.  That single allegation describes a potential

violation of the standard duty not to cause others undue harm, and for that reason alone this

negligence claim will not be dismissed in its entirety.

The next issue is whether any statutory immunity prevents liability from attaching even

to that alleged negligent act.  Clearly, discretionary act immunity does not protect the Officers

with respect to the implementation of their day-to-day duties.  Malicious prosecution immunity

(Cal. Gov't Code § 821.6) and the immunity provided by Cal. Penal Code § 847 might not

apply, because these immunities focus on the arrest stage of a prosecution and plaintiff alleges

negligence arising after a prolonged detention.  As discussed above, <u>Martinez</u> distinguishes

between negligence in the initiation of a prosecution and negligence that arises over time.  It is

not out of the question that plaintiff's allegations against the Officers will be shown to fit into

United States District Court

For the Northern District of California

18

that same space created by <u>Martinez</u>.  Similarly, when read as a whole, § 847 is clearly focused on the immunity of police officers as to any injuries a person may suffer due to an arrest.[6]

In summary, the negligence claim against the City defendants is dismissed to the extent that it alleges negligent investigation, but sustained to the extent that it alleges negligence in the form of affirmative discouragement of third parties trying to prove plaintiff's innocence.

## IV.  ORDER

For the foregoing reasons, the court grants in part and denies in part defendants' motions to dismiss as follows.  The County's motion is GRANTED with prejudice as to the § 1983 claim against the District Attorney's Office.  The County's motion is GRANTED with prejudice as to the § 1983 claim against the Public Defender's Office insofar as the claim is based on a failure to adequately train attorneys, or on policies of discouraging defendants from going to trial; it is DENIED insofar as the claim is based on a policy of waiting for the District Attorney's Office to perform forensic tests.  The City's motion is DENIED as to the § 1983 claims against the Officers.  The City's motion is DENIED as to the § 1983 claim against the City insofar as the claim is premised on a practice of keeping a suspect in custody, despite evidence pointing to someone else, until the true suspect is arrested; it is GRANTED with prejudice insofar as the claim is premised on a failure to adequately train officers regarding investigation techniques.

---

[6]    "§ 847. Arrest by private person; duty to take prisoner before magistrate or deliver him to peace officer; liability for false arrest.
(a) A private person who has arrested another for the commission of a public offense must, without unnecessary delay, take the person arrested before a magistrate, or deliver him or her to a peace officer.
(b) There shall be no civil liability on the part of, and no cause of action shall arise against, any peace officer or federal criminal investigator or law enforcement officer described in subdivision (a) or (d) of Section 830.8, acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest under any of the following circumstances:
(1) The arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful.
(2) The arrest was made pursuant to a charge made, upon reasonable cause, of the commission of a felony by the person to be arrested.
(3) The arrest was made pursuant to the requirements of Section 142, 837, 838, or 839."
Cal. Penal Code § 847 (West Supp. 2006).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    The motions are GRANTED with prejudice as to the Bane Act claims against the

2  District Attorney's Office, the City and the Officers insofar as the claims are premised on a state

3  or federal right to effective assistance of counsel.  Otherwise, the motions are DENIED as to

4  those claims.  The County's motion as to the Bane Act claim against the Public Defender's

5  Office is GRANTED, but plaintiff has leave to amend.  Any amended complaint shall be filed

6  by November 13, 2006.

7    The County's motion is GRANTED with prejudice as to the negligence claims against

8  the District Attorney's Office and the Public Defender's Office insofar as the claims are

9  premised on direct liability of the entities; the motion is DENIED insofar as the claims are

10  based on *respondeat superior* liability.  The City's motion as to the negligence claims against

11  the Officers is GRANTED with prejudice insofar as the claims allege negligent investigation,

12  but DENIED insofar as they allege affirmative malfeasance.  The City's motion as to the

13  negligence claim against the City is GRANTED with prejudice insofar as the claim is premised

14  on direct liability of the City or premised on *respondeat superior* liability for the Officers'

15  negligent investigation; it is DENIED insofar as the claim rests on *respondeat superior* liability

16  for the Officers' affirmative malfeasance.

17    Finally, the City defendants' motion for a more definite statement is DENIED.

18

19    **IT IS SO ORDERED.**

20

21  Dated:  11/1/06                          __/s/   Howard R. Lloyd_____
                                            HOWARD R. LLOYD

22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

20

THIS IS TO CERTIFY THAT A COPY OF THIS ORDER WILL BE ELECTRONICALLY
MAILED TO:

Robert Baker Burchfiel CAO.Main@ci.sj.ca.us

David Michael Rollo david.rollo@cco.sccgov.org, anna.espiritu@cco.sccgov.org

Loren Bryan Vaccarezza lorenbvaccarezza@yahoo.com,

**Counsel are responsible for transmitting this order to co-counsel who have not signed up
for e-filing.**

Dated:      11/1/06                         /s/  JMM
                                     Chambers of Magistrate Judge Howard R. Lloyd

**United States District Court**
For the Northern District of California

21